UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO: 16-24266-CIV-MORENO/LOUIS

TAXINET, CORP.,

      Plaintiff,

v.

SANTIAGO LEON,

      Defendant.

_____/

## REPORT AND RECOMMENDATIONS

This cause came before the Court upon Defendant Santiago Leon's Motion for Summary Judgment and Incorporated Memorandum of Law (ECF No. 144). This action was referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, by the Honorable Federico A. Moreno, United States District Judge, for all pretrial matters (ECF No. 177). The Motion was fully briefed and, on April 7, 2020, the undersigned conducted oral argument on the issues raised therein. Upon consideration of the pertinent parts of the record, the Parties' arguments at the hearing, and being otherwise fully advised in the premises, the undersigned recommends that Leon's Motion be **GRANTED in part and DENIED in part**.

I.      **BACKGROUND**[1]

This suit arises from a failed joint venture attempted between Plaintiff, Taxinet Corp., and Defendant, Santiago Leon. Taxinet is a South Dakota corporation that operates a ride–hailing

---

[1] The facts are derived from Taxinet and Leon's respective Statement of Facts (ECF Nos. 181,145) ("PSOF" and "DSOF") and are undisputed unless otherwise noted. The undersigned has relied upon Plaintiff's Revised Statement of Facts, filed on March 31, 2020, after the close of discovery. *See* Order denying Defendant's Expedited Motion to Strike, ECF No. 185.

application for taxis in Ecuador and is owned by Luis Noboa, the company's registered agent, and his two children (PSOF 181 ¶ 5). Santiago Leon is a businessman and former politician in Mexico, who along with his business partner Eduardo Zayas, was interested in providing a similar ride–hailing service in Mexico City (DSOF ¶¶ 2, 3). In 2015, Leon and Taxinet, acting primarily through Noboa, partnered to present Taxinet's ride-hailing system to Mexico City in effort to obtain a contract with the government to operate the system there. The partnership failed and Leon found new partners with whom to pursue the business in Mexico, and they were ultimately awarded the contract—or "concession"—from Mexico City to operate the taxi-hailing system for a period of ten years. Taxinet now sues for breach of the joint venture; conversion of Taxinet's confidential and proprietary business processes; fraudulent inducement (to disclose the confidential business information); unjust enrichment; and tortious interference with its prospective business relationship with Mexico (ECF No. 66). Taxinet also asserts a claim for promissory estoppel, as an alternative to its breach of joint venture claim, because it may have no adequate remedy at law. It seeks damages incurred as a result of its lost opportunity to operate the concession with Mexico City for the duration of the contract, over ten years.

### A. Origin of the Joint Venture

The Parties' relationship began in the summer of 2015, when Pedro Domit, a mutual friend, introduced Noboa to Leon. Leon had told Domit about an opportunity he perceived to provide taxi-related services in Mexico City.[2] Domit made the introduction to explore a joint business to provide Taxinet's services, like those it offered in Ecuador, including a ride-hailing application. Over the next several months, the three men—Domit, Leon and Noboa—pursued a business opportunity together to operate a similar platform in Mexico City.

---

[2] Though Noboa asserts in his Declaration that it was Taxinet's pursuit that Leon was asked to join, Taxinet admitted in this fact asserted in Defendant's Statement of Material Facts (PSOF ¶ 4).

The trio anticipated incorporating a Mexican corporation for operating the business, in which they initially agreed Taxinet would own 70%, with Leon or his entities owning 30%, and Domit's ownership based on a portion of Leon's ownership. The equity division later changed, with Taxinet's interest agreed at 60% and Leon's interest at 40%, again with Domit's interest derived from a portion of Leon's interest. Without formalizing this agreement and incorporating their company in Mexico, the intended partners worked together towards their common goal.

Leon had prior business dealings with government officials in Mexico City and was able to procure a meeting with the Secretary of Mobility in August of 2015. Noboa prepared a presentation, for which Leon contributed details including a rate for services specific to the Mexican region (ECF No. 181-5 at 00235). On August 17, 2015, Noboa and Leon met with the Secretary of Mobility of Mexico City to present their plan to bring Taxinet's technology to taxis in Mexico City. The meeting went well, and Leon, Taxinet, and Domit continued to collaborate on several fronts to obtain a contract with Mexico City: a concession agreement for the provision of services over a finite period of time.

Throughout August 2015, Leon and Noboa exchanged ideas for performing the concession once awarded. They contemplated the technological needs for the venture and the drivers who would use the platform. Leon suggested the creation of emails for employees of Taxinet Mexico (ECF No. 181–5 at 00241). The partners contemplated various scenarios for provision of the equipment to drivers and estimated the revenue they anticipated; in a text exchange on August 19, 2015, Noboa remarked that Leon's estimate ($32,400 per vehicle per year) was their target (*id.* at 00245) and their target for five years was almost $200 million (ECF No. 181–5 at 00246). Noboa worked through the end of August in Miami, periodically seeking data inputs from Leon for planning or projecting costs, including salaries of future employees (ECF No. 181–5 at 00247).

Leon remained in Mexico to meet with politicians to support the joint venture and he also

3

met with unionized taxi drivers (ECF No. 181–4 ¶ 30). Leon had meetings in late August and September 2015, culminating in a "final proposal" on September 25, 2015. After this meeting, Leon told Noboa and Domit that Mexico City had decided to award the forthcoming Mexican entity the concession agreement, reporting "We closed Lucho!" and similarly to Domit, "We closed in Mexicoooooo!"[3]. Leon communicated to Noboa in the same text chain that the City of Mexico was "already married to" the venturers, and the term would be a ten-year renewable contract.

The trio conducted themselves as though they were partners. Domit created a group text chat he named "TaxiNet Mexico" with Leon and Noboa, his "partners" (ECF No. 181–11 at 00308). Leon described a meeting attended by all three as a "board meeting." (ECF No. 181–5 at 00265). And in contemporaneous writings, Leon recognized Noboa's partnership interest in their venture; in late September, Leon questioned Domit whether Noboa would be willing to sell a part of his equity to an investor Leon sought to fund the project, so that Leon and Domit's percent of ownership would not be diluted by adding the investor to the equity shares (ECF No. 181–6 at 00296).

Yet throughout this time, they failed to incorporate the company they anticipated incorporating in Mexico. Domit characterized the formation of the company as an "urgent matter" on September 7, 2015, and confessed he was not sure who was responsible for doing so.[4] Leon urged Noboa to finalize their efforts to incorporate the anticipated Mexican corporation, sending him names of lawyers he recommended for corporate work (EC No. 181–5 at 00248). Leon proposed the corporate name of "Lusampe sapi de cvmobile services," which Noboa approved. *Id.*

On October 3, 2015, Leon and Noboa had a heated exchange over Noboa's failure to

---

[3] ECF No. 181-6 at 00295; 181-5 at 00257. "Lucho" is Leon's name for Noboa.
[4] ECF No. 181-11 at 00308.

provide necessary documents for the incorporation of the Mexican corporation without Leon's oversight and persistence. In defending himself, Noboa told Leon "I would like to be clear that I'm the one who most wishes to get on with this but it must be done in an orderly manner, we're all aware of what's happening and for one It's not clear for me what can be charged or what the business model to follow is." (ECF No. 181–5 at 00263).

The Parties continued their efforts to incorporate and discussed proposed bylaws for the future Mexican company (ECF No. 181–18) (email of October 8, 2015 from Domit to Leon and Noboa memorializing the articles and bylaws they discussed). Similarly, their efforts to close with Mexico City persisted, and a stress test was scheduled to confirm the functionality of Taxinet's technology. What happened after that is quite contested. For purposes of this Motion, suffice to say the company was never incorporated.[5] In May 2016, the Government of Mexico City awarded a ten-year concession to Lusad S de. R.L., a Mexican Company formed by Leon with new partners.[6]

### B. Procedural Background

On August 24, 2016, Taxinet filed its Complaint against Leon in the Circuit Court for the Eleventh Judicial Circuit in and for Miami–Dade County (ECF No. 1–1). Plaintiff alleged the following claims: (1) fraud and fraudulent inducement; (2) conversion; (3) tortious interference; (4) violation of Florida's Deceptive and Unfair Practice Act ("FDUPTA"), Fla. Stat. §§ 501.201 *et seq.*; (5) misappropriation and use of trade secrets, and (6) constructive trust. *See*. Compl. (ECF No. 1). The case was transferred to this Court and Leon moved to dismiss all counts of the Complaint (ECF No. 38). The Court granted Leon's motion, with leave to amend; explaining that

---

[5] Again, Taxinet's Response to Defendant's Statement of Material Facts contradicts the facts and evidence it advances on this point, as it disputes Defendant's statement that the company was never formed (DSOF ¶ 25) but advances in its own statement a reason for why the company was not formed (PSOF ¶ 25).

[6] The Concession Agreement awarded to LUSAD in the record has been translated from Spanish to English.

all claims were due to be dismissed because Taxinet failed to state a claim of misappropriation of trade secrets and tortious interference and dismissed Taxinet's remaining tort claims because they were preempted by Florida Uniform Trade Secrets Act, Fla. Stat. § 688 (ECF No. 51).

On September 18, 2018, Taxinet filed its Amended Complaint, alleging the following claims: (1) breach of joint venture agreement; (2) fraud and fraudulent inducement; (3) conversion; (4) tortious interference; (5) promissory estoppel; (6) unjust enrichment; and (7) violation of FDUPTA. *See* Am. Compl. (ECF No. 66). Taxinet alleges that Leon and Taxinet agreed to join forces "to present a project" to Mexico City: Taxinet would contribute its expertise in the industry as well as its technology, and Leon would contribute his expertise in the government of the City for the procurement of the contract (*id.* at ¶ 19). Relying on his representations about his intentions to partner with Taxinet, and promises to operate the business jointly with Taxinet, Plaintiff disclosed its confidential business know-how to Leon (*id.* at ¶ 20-21, 28) and granted access to its software and infrastructure to a team of technicians retained by Leon (*id.* at ¶ 45). Plaintiff alleges that Leon's representations were all false: he had been surreptitiously working with third parties to start a different venture, secure the concession agreement with Mexico City, and not only excluded Taxinet from the concession-winning venture but interfered with any chance Taxinet had of winning the concession by falsely disparaging the Taxinet technology to his contacts in the Mexican Government (*id.* ¶ 55).

Leon moved to dismiss all counts of the Amended Complaint (ECF No. 73). Relevant to the present motion, Leon argued that Taxinet's claims were barred by the Statute of Frauds because its claims are all based on an oral contract that could not be performed within a year of its inception. The Court denied Leon's motion in its entirety. The Court determined that the question of "whether the joint venture was to obtain the contract with Mexico City or to jointly run the company providing mobile taxi services for an indefinite duration is a question of fact turning on the Parties'

6

intent. The issue is one best reserved for summary judgment." (ECF No. 94).

Leon subsequently filed his Answer and Affirmative Defenses to the Amended Complaint, and also raised a counterclaim against Taxinet, and third party claim against Noboa and Dormit, alleging: (1) fraudulent misrepresentation; (2) negligent misrepresentation; (3) fraudulent concealment; (4) civil conspiracy; and (5) breach of fiduciary duty (ECF No. 104).

Leon moves for summary judgment on the affirmative defense that all of Taxinet's claims are barred by the Statute of Frauds (ECF No. 144). Leon argues that the oral joint venture agreement was "an agreement to form a joint venture, which venture would provide ride–hailing, taxi related services in Mexico City pursuant to a concession from the city," which could not be performed within a year and thus, any claims arising from that oral agreement are barred by the Statute of Frauds (ECF No 144, at 1). Leon does not assert any other grounds for summary judgment in his Motion.

In response, Taxinet disputes that the Statute of Frauds bars its claims because the joint venture agreement is memorialized in not one but several writings that collectively evidence the material terms of the agreement. Taxinet further challenges the Motion on the grounds that the undisputed evidence adduced by Leon fails to prove that the joint venture agreement could not be performed within a year, making the Statute of Frauds inapplicable.

In Reply, Leon raises for the first time an argument that even if the evidence adduced is sufficient to cast a material dispute as to the Parties' intended duration of the agreement, the evidence fails to show that the Parties agreed to form a joint venture because the Parties did not agree to share the losses of the joint venture. *See* Reply (ECF No. 158 at 6).

## II.     STANDARD OF REVIEW

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must demonstrate that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts, and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must come forward with "specific facts showing a genuine issue for trial." *Matsushita*, 475 U.S. at 587.

"A fact [or issue] is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (internal quotations omitted). Furthermore, "[a]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Southeast*, 492 F. App'x 16, 26 (11th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party." *Id.* at 26-27.

In considering a motion for summary judgment, the Court must evaluate the evidence and draw all inferences in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.  A court will not weigh conflicting evidence at this stage of the proceeding. *Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007).

8

### III.    ANALYSIS

#### A.  Statute of Frauds

Leon argues that the object of the Parties' oral agreement was to operate a business for a long term, longer than one year (ECF No. 144 at 11). Leon relies on the fact that the concession ultimately granted by the City of Mexico is for a period of ten years. He additionally advances evidence that even Noboa admits that he did not believe operation could feasibly begin within a year due to technical and logistical issues that arose. Finally, he advances evidence that the Parties contemplated operating the concession long term: Noboa intended to run the business from Miami; the Parties projected revenue based on multi-year forecasts, from which Noboa suggested employees would be paid; and indeed in this suit, Taxinet seeks to recover its estimated portion of those profits over the ten-year period of operation. Leon seeks summary judgment on Taxinet's contract, tort and statutory claims, all on the theory that the claims are all dependent on Taxinet's alleged contract rights, and because the statute of frauds bars its contract claims, so too must its derivative claims.

Taxinet primarily opposes summary judgment on the premise that the contract is evidenced by the writings and evidence in the record and thus not barred by the Statute of Frauds. Taxinet's (Revised) Statement of Facts advances hundreds of pages of text messages between Leon and Noboa, and Leon and Domit, which memorialize the Parties' discussions about the joint venture and efforts to win the concession with Mexico City. Taxinet contends that the text messages, combined with e-mails (primarily those sent by Domit), prove the existence of the joint venture between the Parties (ECF No. 180 at 5).  Alternatively, Taxinet argues that the contract was capable of being performed within one year, evidenced by the fact that Leon and his new partners were awarded the concession within a year—and argument premised on the theory that the oral agreement was for the purpose of obtaining the concession, nothing more.

Florida's Statute of Frauds states in relevant part:

> No action shall be brought…upon any agreement that is not to be performed within the space of 1 year from the making thereof…unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith or by some other person by him thereunto lawfully authorized.

Fla. Stat. § 725.01. Florida law requires that "all actions based on agreements for longer than one year must depend on a written statement…[t]he statute should be strictly construed to prevent the fraud it was designed to correct […]." *Tanenbaum v. Biscayne Osteopathic Hosp., Inc.*, 190 So. 2d 777, 779 (Fla. 1996). The Florida Supreme Court has held that the statute of frauds only applies if full performance of the oral contract is impossible within a year. *OJ Commerce, LLC v. Ashley Furniture Indus., Inc.*, 359 F. Supp. 3d 1163, 1172 (S.D. Fla. 2018) (citing *Browning v. Poirier*, 165 So. 3d 663, 665–66 (Fla. 2015) (holding that an oral agreement to share lottery proceeds was outside the Statute of Frauds because at the time of their oral agreement nothing in the terms of their contract demonstrates that it could not be performed within one year); *see also Hayes v. Moon*, No. 16-80365-CIV, 2017 WL 2547205, at *2–3 (S.D. Fla. Jun. 13, 2017) (finding that an oral agreement was barred by the Statute of Frauds because record evidence established that the oral agreement was for a term of three years).

Leon bears the burden of demonstrating that the oral contract is within the Statute of Frauds and that there are no writings that evidence the essential terms of the oral agreement. The first step then is to consider the evidence of the Parties' intention to determine whether Leon has met his burden, or if there is any genuine dispute as to whether the alleged oral agreement was capable of performance within a year.

### 1.  Full Performance as Intended by Parties Was Not Possible In One Year

Leon's Statement of Material Facts advances facts that demonstrate that the Parties' intention was to operate a venture indefinitely, and that the purpose of their joint venture could not

be fully performed within a year. For example, Noboa, testifying as the sole owner and officer of Taxinet,[7] agreed that the purpose of the business venture with Leon was to form a Mexican company, in which Taxinet would have an ownership interest, and to which Taxinet would license in perpetuity its technology; and for the Mexican company to contract with and provide services to the city of Mexica City and its taxis (DSOF ¶ 17; ECF No. 145-4 at 177:22-178:4). Taxinet admits, in its response to Leon's Statement of Facts, that the joint venture business with Leon was to provide services to taxis registered in Mexico City under the ten-year contract (DSOF ¶ 21; PSOF ¶ 21). Taxinet further admits that it was "going to operate the Mexican concession from the United States" (DSOF ¶ 23; PSOF ¶ 23). Doing so was not possible within a year of the Parties' oral agreement, as evidenced by Noboa's testimony that it was not his expectation to launch operations within the first year because its technology would not be ready:

> Q: And the outcome of the meetings we're discussing—discussion of forming a Mexican corporation to contract with the Mexico City government to provide services to the taxis of Mexico City, correct?
>
> A: The idea was to have a local company. …The idea was always to open subsidiaries of the South Dakota company in each of the countries and at the end put everything on one basket and divide it among the owners of those companies the equities of Taxinet. … But the original—well, no, not the original—but after our first meeting with [Leon] and the ways of presenting it to the City of Mexico that it needed to be done that way in order to actually go into the market and have our system presented, was actually a very good way of expanding ourselves. […] <u>Again, I never—I was never looking on the first year of actually operating an expansion and creating, going into Mexico City. It needed a lot of work.</u> It needed, you know, some changes on the different structures that we have. And some changes also on what [Mexico City] requested [Leon] to meet.

(ECF No. 181–2 at 161:25–163:1–22) (emphasis added).

Notwithstanding its admissions, Taxinet contends that the intent of the joint venture was to simply obtain the concession from Mexico City, a feat capable of accomplishing within one

---

[7] It is not clear whether the deposition cited by both parties was taken pursuant to Fed. R. Civ. Pro. 30(b)(6), however, both sides have offered his testimony as though binding on the corporation and Taxinet has not objected to Leon's reliance on the testimony as binding on Taxinet.

year, and thus their agreement falls outside of the Statute of Frauds. The evidence cited by Taxinet to support this statement in its Revised Statement of Facts (PSOF at ¶ 34) does not, however, even raise a fair inference that this was the Parties' agreement. For example, Plaintiff cites to an email from Domit memorializing a discussion among the putative partners assigning responsibility for specific tasks required operation of the taxi-related services in Mexico City; the second task appears to be obtaining the "[c]ontract with AM," but the rest of the tasks, including training staff and overseeing a marketing campaign, hardly support Plaintiff's contention this evidences that the Parties intended the joint venture only to obtain the concession, not to operate it (ECF No. 181-16). Similarly, Plaintiff cites to multiple passages from Defendant Leon's deposition, wherein Leon testified about the Parties' respective anticipated contributions to the partnership: Taxinet was to contribute the software, Leon the opportunity. But neither Leon's testimony, nor Noboa's declaration,[8] support Taxinet's statement regarding the Parties' sole intention to *obtain* a contract.

Rather, the record evidence indicates the oral joint venture exceeded beyond obtaining the concession agreement and included the implementation of Taxinet's technology as well as operation of the ride–hailing service for the ten–year term of the concession agreement. *See OJ Commerce*, 359 F. Supp. 3d at 1173–74 (finding an oral agreement was barred by the Statute of Frauds because it could not be performed within one year and the record evidence demonstrated the parties had contemplated a term longer than a year; and rejecting plaintiff's arguments that the contract could have been performed within one year if defendant would have offered mass discounts because it was inconsistent with the evidence of the parties' agreement).

This case is closely analogous to *Saeme v. Levine*, 502 Fed. App'x. 849 (11th Cir. 2012), which affirmed summary judgment on defendant's affirmative defense on statute of frauds. The

---

[8] ECF No. 181-4 at ¶ 24 (describing the Parties' agreement to create a Mexican company "to facilitate the implementation of Taxinet's services" in Mexico City).

parties there agreed to a joint venture to provide spa services marketed to cruise ships. *Id.* at 580. The venture required the partners to obtain a license from a third party for spa products, and they contemplated incorporation of companies to hold the license and through which to operate the business. *Id.* at 850–51. They never reduced their agreement to writing, and when the relationship failed, one partner sued the other—and his newly formed company holding the coveted license— for breach of the partnership agreement. *Id.* at 851. The court granted summary judgment finding "no record evidence to indicate that [plaintiff and defendant] intended for the performance of their alleged partnership agreement to occur within one year, and Florida courts have specifically held that an oral agreement to enter into a new business that will continue indefinitely is barred by the statute of frauds." *Id.* at 852 (internal quotations omitted). Analogous to *Saeme*, there is no record evidence here to indicate that the Parties intended for full performance of their oral agreement to occur within one year or that they agreed to a term of performance for the new business at all. Also, as in *Saeme*, Plaintiff's argument here is belied by his allegation that he has been damaged by not receiving his portion of revenue expected from the operation of the concession in Mexico City by Leon and his new partners. *Id.*; *see also* DSOF ¶ 31; PSOF ¶ 31. Accordingly, unless a writing signed by Leon memorializes the material terms of the Parties' agreement, Plaintiff's claims are, at least to the extent they depend on rights conveyed by the contract, barred by the statute of frauds. *Saeme v. Levine*, No. 11-CV-21913, 2012 WL 13134604, at *6 (S.D. Fla. June 12, 2012), *aff'd*, 502 F. App'x 849 (11th Cir. 2012).

## 2.    No Signed Writing Exists

A party may overcome a Statute of Frauds defense by evidencing writings, at least one of which is signed by the party who challenges the existence or terms of the contract, to determine the terms of the parties' agreement. *U.S. Distributors, Inc. v. Block*, No. 09-21635-CIV, 2009 WL 3295099, at *5 (S.D. Fla. Oct. 13, 2009) ("Courts may aggregate several writings (at least one of

which is signed by the party to be charged) to make out the terms of the whole contract."). Taxinet argues that whether the Parties could fully perform the joint venture within one year is not dispositive of the Motion because the record contains several writings that when read together establish the material terms of the joint venture agreement. Taxinet relies on the Parties' text messages and emails,[9] two of which bear Leon's electronic signature, as evidence of their joint venture agreement. Leon contests Plaintiff's ability to overcome the Statute of Frauds defense, arguing that while Plaintiff advances writings referencing an agreement, none of the writings demonstrate a meeting of the minds as to the material terms of the alleged agreement (ECF No. 158, ¶ 9).

The threshold question is whether the evidence in the record creates a contract under Florida law, which requires "that there be mutual or reciprocal assent to certain and definite proposition, which is commonly referred to as a 'meeting of the minds.'" *Id*. (citing *Glosser v. Vasquez*, 898 So. 2d 1179, 1181 (Fla. 3d DCA 2005)). A meeting of the minds has not occurred between the parties when essential terms are left open for consideration or negotiation. *Id*. The contract here alleged was for a joint venture, which is "a special combination of two or more persons, who, in some specific venture seek a profit jointly without the existence between them of any actual partnership, corporation, and other business entity." *See Servicios De Almacen Fiscal Zona Franca Y Mandatos S.A., a/k/a S.A.F., S.A. v. Ryder Int'l, Inc.*, No. 06-22774CIV, 2007 WL 628133, at \*2 (S.D. Fla. Feb. 26, 2007), *aff'd sub nom. Servicios De Almacen Fiscal Zona Franca Y Mandatos S.A. v. Ryder Int'l, Inc.*, 264 F. App'x 878 (11th Cir. 2008) (quoting *Browning v. Peyton*, 918 F.2d 1516, 1520 (11th Cir. 1990)). In addition to the existence of an express or implied

---

[9] In his Reply and at the hearing, Leon objected to Taxinet's use of the emails in the subject Motion on the grounds that they constitute settlement discussions and are not inadmissible under Federal Rule of Evidence 408. At the hearing, the undersigned overruled Leon's objection to its consideration of the emails, finding he had failed to demonstrate the existence of a conflict he contends these emails sought to settle or that Plaintiff's proffered use of the emails violates Fed. R. Evid. 408. *See* Order Denying Defendant's Motion in Limine (ECF No. 188).

contract, the following are essential elements of a joint venture agreement: (1) a community of interest in the performance of the common purpose; (2) joint control or right to control; (3) a joint proprietary interest in the subject matter; (4) a right to share in the profits; and (5) a duty to share in any of the losses which may be sustained. *Id*.

Tellingly, Plaintiff's Response does not offer to summarize the material terms of the Parties' agreement or identify succinct citation to specific documents that memorialize those terms and the Parties' agreement thereto. The undersigned has reviewed the entirety of evidence cited in support by Plaintiff and while it does, as Plaintiff contends, support an inference that the Parties had an agreement to pursue this joint venture, it does not satisfy the statute of frauds because even aggregated, the writings do not show a meeting of the minds or memorialize the material terms of the agreement. In this respect, this case is not analogous to *Innovative Fuel Prod., LLC v. BP Prod. N. Am. Inc.*, No. 3:10V79/LAC, 2011 WL 13233305, at *2 (N.D. Fla. Sept. 9, 2011), cited by Plaintiff for the proposition that the numerous writings in the record are sufficient to satisfy the statute of frauds. In denying summary judgment, the court there reviewed the evidence and found "the essential terms of the agreement were sufficiently reduced into written form to satisfy the statute." *Id*. Though the specific writings on which the court's holding are not described, the order references at least two written agreements that were signed by the parties.

As recounted above, the text messages between the Parties demonstrate that they did, for several months, work cooperatively to present their initiative to the government of Mexico City and their communications support the inference that they viewed each other as partners. It is undisputed, moreover, that the Parties agreed to divide the equity interest in the anticipated Mexican company to afford the greater share (70, then 60, percent) to Taxinet. Leon memorialized his discussion with Noboa in a text message to Domit on August 1, 2015. Though the message is vague, at this posture Taxinet is entitled to the inference that Leon's statement "30% of the

15

Mexican one" after meeting with Noboa signifies Leon's agreement to take a 30% interest in the Mexican company, leaving 70% to Taxinet (PSOF ¶ 18). And similarly, the emails Plaintiff cites to—without context or further explanation—support the inference that by October 2015, the Parties had agreed to an equity split that apportioned Taxinet a 60% interest in the Mexican company.[10] ECF No 181-9, 181-10. These emails are not from, and are not signed by, Leon, who contests Taxinet's efforts to use such unsigned documents as evidence of a writing.

Plaintiff contends that these writings may be combined with two emails Leon did send and sign in order to satisfy the statute of frauds. In late October, Leon sent two emails to Noboa and Domit, in which he complains about the results of a recent stress test performed on Taxinet's technology in Mexico City, and in which he proposes a revised split of equity to reduce Taxinet's share of the (still not incorporated) Mexican operating company. Leon sent a second email days later similarly raising his proposal for changing the equity split but clarifying Domit's anticipated share.

Assuming that these emails may be combined with the other unsigned writings to evidence the Parties' agreement as to equity, Plaintiff's evidence nonetheless fails in two respects: first, the writings fail to show a meeting of the minds even with respect to equity percentage, but rather memorialize a number of different agreements reached on this term. The more significant issue here is that division of equity is but one material term of the Parties' joint venture agreement, and Plaintiff's evidence fails to show a writing or writings that evidence the Parties' agreement on any other term.

At best, the record evidence shows an agreement to agree in the future, which Florida courts have consistently found unenforceable. *Servicios De Almacen*, 2007 WL 628133, at *3; *Lafarge*

---

[10] Noboa testified that this was orally agreed at a meeting in Miami but cites to no evidence of a writing memorializing that agreement between the Parties. *See* PSOF ¶ 19; 181-2 at 161:9-25.

*North America, Inc. v. Matraco Colorado, Inc.*, No. 07-80112-CIV, 2008 WL 2277503, at *5 (S.D. Fla. May 30, 2008) (finding that the writings in the record did not create an enforceable contract because several material terms remained open for negotiation). Indeed, Leon's October 24 email (ECF No. 181–12) refers to Noboa and Domit as his "future partners" and urges the Parties to finalize a formal agreement, but the email does not memorialize what that agreement entails. Likewise, Leon's October 27 email (ECF No. 181–23) implies that Noboa and Leon discussed the steps necessary to finalize the Mexican entity and move forward with the joint venture but again, the email does not memorialize the terms of their agreement. Similarly, the emails from Domit, summarizing discussions about the bylaws and articles of incorporation, expressly seeks approval and confirmation from Noboa and Leon; whether they assented or rejected Domit's summary is not in the record, but the email, standing alone, cannot evidence a meeting of the minds where it contemplates future agreement (ECF No. 181–18). *Servicios De Almacen*, 2007 WL 628133, at *3 (dismissing plaintiff's claim for breach of oral joint venture agreement because "[t]he documents at issue here are replete with language that contemplates the need for future agreements without specifying the essential terms thereof.").

By contrast, Leon did acknowledge, via text message, Domit's email regarding the Parties' respective responsibilities (ECF No. 181–5 at 00242). Taken in the light most favorable to Taxinet, this evidence creates a material disputed fact sufficient to show the first element of a joint venture. Notwithstanding, a joint venture will not be found if any of the elements have not been established. *Williams v. Obstfeld*, 314 F.3d 1270, 1276 (explaining that Florida courts will not find a joint venture where all the elements have not been established and holding that no joint venture existed because the evidence showed parties did not share losses as the party providing its expertise instead of capital received a commission).

Moreover, Leon argues that Taxinet's argument that the writings in the record demonstrate

a meeting of the mind on all the material terms of the joint venture is undercut by Noboa's deposition testimony that the Parties had not reached an agreement on the material term of joint losses:

> Q: Mr. Noboa, my question to you is, if there are losses, are the ventures going to share those losses ratable to their ownership in the venture? And you said
> A: Logically, we will say–yes. And logically, you know, profit or losses on a company are shared by the owners, depending on the percentages. So that's a logic answer that I'm telling you.
> Q: Okay.
> A: If we ever had that that conversation, the answer is no.

See Noboa Dep. Oct. 1, 2019 (ECF No. 187–1) (142:8–19). Additionally, Noboa confirmed that Leon was funding the project in its entirety. (*id*. at 143:8–144:1).

In the absence of any writings to the contrary, it is apparent from Noboa's testimony that the Parties had not agreed as to the material term of whether and how the parties would share in the venture's losses. The absence of agreement on this material term is sufficient to establish that the parties did not enter into a joint venture agreement because a joint venture will not be found to exist if any element is missing. *See Advanced Protections Tech.*, 390 F. Supp. 2d at 1159 (granting motion for summary judgment in favor of defendant because plaintiff testified that the parties to a joint venture had not discussed how losses would be shared between them; *Servicios De Almacen,* 2007 WL 628133, at *2 (granting motion to dismiss claim for breach of oral joint venture because the writings in the record were silent as to the material element of sharing losses).

Accordingly, the undersigned finds that the record establishes that Taxinet's breach of oral joint venture agreement (Count I) is barred by the Statute of Frauds as it cannot be performed within one year and the contract is not evidenced by a writing or writings signed by Leon.

### B. Plaintiff's Remaining Claims

Plaintiff's remaining claims allege fraud and fraudulent inducement (Count II), conversion (Count III), tortious interference with a business relationship (Count IV), FDUPTA violation

(Count VII), promissory estoppel (Count V), and unjust enrichment (Count VI). Leon seeks judgment in his favor on these claims on the sole ground that all of the claims must be dismissed as they stem from Taxinet's breach of contract claim, which is barred by the Statute of Frauds. In response, Taxinet relies on its argument that the writings in the record satisfy the statute of frauds and for the same reason its contract claim is not barred, so too its remaining claims are spared from summary judgment.

It is widely recognized in this Circuit that "the statute of frauds also serves to bar any claims that are premised on the same conduct and representations that were insufficient to form a contract and are merely derivative of the unsuccessful contract claim." *See Dixon v. Countrywide Fin. Corp.*, 664 F. Supp. 2d 1304, 1309 (S.D. Fla. 2009) (internal quotations omitted) (dismissing FDUPTA, negligent misrepresentation, and fraud claims because they were premised upon the same conduct and statements as the barred breach of contract claim). "To hold otherwise would allow every failed breach of contract claim to morph into a negligent misrepresentation or FDUPTA claim…" *Id.* at 1310 (citing *Conner, I, Inc. v. Walt Disney Co.*, 827 So. 2d 318 (Fla. 5th DCA 2002) (dismissing negligent misrepresentation claim where alleged contract was found to be unenforceable)).

Taxinet's tort claims are based upon the same misconduct and misrepresentations that serve as the premise for Taxinet's breach of joint venture agreement and are dependent on Plaintiff's putative rights derived from that contract. Taxinet offers no argument or evidence to distinguish these claims from its contract claim (except for its claim for unjust enrichment, as explained below). For the reasons explained above, the writings are not sufficient to satisfy the statute of frauds and to the extent Plaintiff's claims are, as Plaintiff apparently concedes, similarly dependent on the existence of an agreement between the Parties, those claims too are barred by the Statute of Frauds. *See Dixon*, 644 F. Supp. 2d at 1309–10; *see also OJ Commerce*, 359 F. Supp. 3d at 1174–

75 (granting summary judgment on claims of fraudulent and negligent misrepresentation and promissory estoppel because both claims arose out of plaintiff's contract claim and indirectly sought damages for plaintiff's claim of breach of that contract, which the court found was barred by the Statute of Frauds).

However, with respect to its claim for unjust enrichment, Plaintiff contends that it alone is not foreclosed by application of the Statute of Frauds. Defendant contends Plaintiff's unjust enrichment claim is similarly barred by the Statute of Frauds, citing *Tews v. Valdeon*, No. 12-23026-CIV, 2013 WL 5333205, at *3 (S.D. Fla. Sep. 23, 2013) and *Browning v. Poirier*, 113 So. 3d 976, 980 (Fla. 5th DCA 2013), *quashed on other grounds*, 165 So. 3d 663 (Fla. 2015). In a thorough opinion cited in opposition by Plaintiff, the Hon. Kenneth A. Marra analyzed both *Tews* and *Browning* in concluding that under Florida law, "an equitable claim of unjust enrichment is not barred where the alleged contract giving rise to the unjust enrichment is found unenforceable by operation of the statute of frauds." *Hayes*, No. 16-80365-CIV, 2017 WL 2547205, at *5 (S.D. Fla. June 13, 2017). Defendant implicitly concedes the holding in *Hayes* but urges that Plaintiff here seeks more than an equitable remedy by demanding damages. While the Amended Complaint requests damages, among other forms of relief in the "Wherefore" clause of Count VI, the allegations sufficiently describe the equitable relief sought, that is, restitution for the unjust enrichment to Leon for accepting the benefit of Taxinet's business information. Because this does not seek to enforce the oral contract, or enforce its rights thereunder, but rather assert a claim in equity independent of the oral contract, the Statute of Frauds does not bar the claim. As this is Defendant's only grounds advanced for entry of summary judgment on this Count, I recommend the Motion be denied as to Count VI.

## IV.    RECOMMENDATIONS

For the foregoing reasons, the undersigned recommends that Leon's Motion for Summary

Judgment (ECF No. 144) be **GRANTED in part and DENIED in part** as follows: Leon's Motion be **GRANTED** as to Counts I–V and VII, and be **DENIED** as to VI (unjust enrichment).

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to file objections by that date shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. *See* 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *Patton v. Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017).

**RESPECTFULLY SUBMITTED** in Chambers this 28th day of May, 2020.

LAUREN LOUIS
UNITED STATES MAGISTRATE JUDGE

The Honorable Federico A. Moreno
Counsel of Record