UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 16-24266-CIV-MORENO

TAXINET, CORP.,

        Plaintiff,

vs.

SANTIAGO LEON,

        Defendant.

_____/

## ORDER GRANTING DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

The jury awarded Plaintiff, Taxinet Corporation, $300 million on its claim of unjust enrichment against Defendant Santiago Leon. Plaintiff's principal, Luis Noboa, and Leon were engaged in discussions to form a company, which would provide a mobile taxi hailing service through a concession agreement from the government of Mexico City. After a five-day trial, the jury found that Santiago Leon indeed received a benefit from Taxinet Corporation between August 26 and September 25, 2015. The jury awarded Taxinet 12.5% of the $2.4 billion value suggested by the entity Goldman Sachs in October 2018.[1]

Defendant filed a renewed motion for judgment as a matter of law.[2] On a Rule 50(b) motion, the question before the Court is whether the evidence is legally sufficient to find for a party on that issue. The Court finds the evidence is insufficient to support a finding of damages, let alone the verdict in this case. Plaintiff did not present any expert testimony as to value or

---

[1] The jury also found in favor of Santiago Leon on a counterclaim of negligent misrepresentation and awarded $15,000 against Taxinet Corporation and Noboa.
[2] The Court denied a Rule 50(a) motion for directed verdict in Open Court on December 13, 2021.

damages. Rather, throughout the trial, Plaintiff asserted entitlement to 60% of a $2.4 billion valuation done three years after it conferred a benefit on Leon. This percentage is not related to the value of the service or benefit Taxinet purportedly conferred on Leon, but instead is based on discussions, never finalized, concerning Taxinet's potential ownership interest in a future company.

Without any other evidence to consider, the jury returned a verdict for an amount based on Plaintiff's potential ownership interest in Lusad S. de. R.L., the Mexican company, which eventually was awarded the concession agreement. The jury's damage award is based on hearsay and speculation. The jury, itself, expressed its difficulty in calculating damages in a note to the Court. It stated: "We are trying to evaluate the market value of services. We are trying to evaluate what a "yardstick" of measurement would be. What do we do if no yardstick is found[?]" The Court finds that indeed, there was insufficient evidence of damages measurable on a yardstick. Accordingly, the Court grants the Defendant's renewed motion for judgment as a matter of law.

I.      **FACTUAL BACKGROUND**

Plaintiff, Taxinet, LLC sued Santiago Leon to recover for unjust enrichment for Taxinet's "business plan, know-how, and technology," which it claims led Leon to obtain an official concession from Mexico City to provide a mobile taxi-hailing service. Pl. Resp. to Renewed Mot. for Judgment at 2. The parties met over the summer of 2015 to work on the joint venture and parted ways on October 24, 2015. After summary judgment, Plaintiff's remaining claim was for unjust enrichment as the Court found no written joint venture agreement was entered as required by the statute of frauds. The Court held a five-day trial on Plaintiff's unjust enrichment claim and Defendant's counterclaim for fraudulent and negligent misrepresentation.

A.  *Evidence at Trial*

On August 17, 2015, Leon and Taxinet had an initial meeting with Mexico City's Secretary of Mobility. After the meeting, the parties continued working towards the goal of getting the concession for the mobile taxi hailing service from Mexico City. On or about September 25, 2015, the parties had a second meeting with government officials, where Taxinet presented a video showing its application in use and the services that would be provided to Mexico City. On September 25, 2015, Leon wrote to Noboa and said: "We closed, Lucho! The Secretary [of Mobility] announced it. Leon also wrote to Pedro Domit "We closed in Mexicoooooo!!!" At that point, there was no actual "closing" in Mexico City. Indeed, the official concession was not awarded until June 17, 2016.

In October 2015, Leon hired Lazlo Palovits to conduct a stress test on the software. The parties agreed to do a stress test on Taxinet's software to determine what upgrades would be needed to operate it in Mexico City. On October 24, 2015, Leon sent an email offering 25% of the company Lusad to Luis Noboa and Pedro Domit to part ways.³ At that point, the parties had no written agreement. (Leon 12/8/21 Trial Tr. 11-12; Noboa 12/8/21 Trial Tr. 21). Noboa rejected this offer. On October 25, 2015, Leon met with "angel investors," Accendo Capital. After parting ways with the Plaintiff, Leon testified that he continued to work on the software. Mexico City eventually published a declaration of need on May 30, 2016, including a description of the services. Taxinet had provided the description. (Pl. Exh. 3). On June 17, 2016, the government issued the official concession to Lusad, which is owned 99.9% by L1bre Corp. and 0.1% by Eduardo Zayas. L1bre is wholly owned by Leon. (Leon 12/8/2021 Trial Tr. 45).

B.  *Damages Evidence*

---

³ Lusad was established on October 15, 2015. (Noboa 12/8/2021 Trial Tr. at 24).

There was no expert testimony on damages at trial. There was no evidence to provide a market value for the "business plan, know-how, and technology" that Taxinet purportedly provided Leon. Plaintiff's principal, Luis Noboa, provided testimony regarding Plaintiff's damages. He testified that he owns 60% of Lusad, the company that was awarded the concession by Mexico City. As such, he claims that he is entitled to 60% of the $2.4 billion valuation at which Goldman Sachs valued Lusad in October 2018, three years after the parties parted ways.

Specifically, Noboa testified that Leon was raising money "on a concession that we owned together, that I own 60%. So whatever money that he raised, . . .I own 60 percent of it. Whatever money that he claims, . . .that the platform is worth now, . . .I own 60 percent of it." (Noboa 12/8/2021 Trial Tr. 43-44). Noboa added that Leon used "the presentations and the different things that he got from me to go to investors and sell the business to everybody else to raise the money, and as of today, for what I can see, . . . it's a lawsuit that he has put forth for $2.4 billion dollars in New York in federal court, which I own 60 percent, so that's my damage." (*Id.* at 47-49). "[W]hat we [are] claiming is 60 percent of our rightful ownership of what we started, the project that we gain by doing [the] presentation." (Noboa 12/9/2021 Trial Tr. 12). Noboa added in his testimony "I'm seeking 60% which is my rightful ownership of what Mr. Leon has valuated and is suing the City of Mexico" to recover. (*Id.* at 17). Leon is suing Mexico City because the government expropriated the company. (Domit Trial Tr. at 57).[4]

The Goldman Sachs valuation of L1bre was done in October 2018. The Court excluded the valuation report as hearsay evidence. The reference to this valuation arises from Leon's testimony. His testimony was that in 2018 – three years after the parties' relationship ended – L1bre retained Goldman Sachs as an investment banker. Goldman Sachs did a valuation to present to potential

---

[4] This information was provided to the Court outside of the presence of the jury. It is not in dispute that Leon is suing Mexico City, as stated by Noboa in his testimony. (Noboa 12/8/2021 Trial Tr. 47-49).

investors. Leon testified "the 2.4 billion valuation was because we worked on it for years and years and got investment for over a hundred million dollars into the project, and that's how we were able to achieve that valuation." (Leon 12/7/2021 Trial Tr. 87, 58) ("At that moment, [October 24, 2015] there was no valuation."). The only evidence of a valuation during the relevant time period was by Pedro Domit, who explained that his financial modeling was "informed guesswork." (Domit Trial Tr. 84-89).

### C. Jury Verdict

The jury found that Plaintiff, Taxinet Corporation, proved that Santiago Leon individually received a benefit from Taxinet from August 26 to September 25, 2015. August 26 is the date of the second meeting with the Secretary of Mobility's office at which the video presentation was shown. September 25 is the date that Leon messaged Noboa that "we closed."

The jury provided a note during its deliberations with respect to damages. The note reads: "We are trying to evaluate the market value of services. We are trying to evaluate what a "yardstick" of measurement would be. What do we do if no yardstick is found[?]" The term – "yardstick" came from the Court's instructions on damages. The instructions read:

> The Plaintiff first must prove that the defendant Leon's action caused the damage and that Leon benefited from that action. If so, then there must be some standard or "yardstick" by which the amount of damages may be adequately determined. An award of damages must be measurable and quantifiable. Although you need not determine damages with arithmetic precision, damages cannot be based on speculative conjecture or guesswork. It is only actual damages that are recoverable based on the actual evidence presented in court.

The jury proceeded to render a verdict on damages. It found that Plaintiff proved an award of damages by substantial competent evidence. The jury then awarded $300 million to compensate Taxinet Corporation for the benefit given to Santiago Leon. The jury added a note stating: "$2.4

5

billion- value by Goldman Sachs[.] Email on Oct. 24, 2015 offered break-up 25% to be given to Noboa and Domit 12.5% of total amount."

## II.   LEGAL STANDARD

At trial, the issue arose as to whether *Hughes v. Priderock Capital Partners LLC* required a jury trial on Plaintiff's claim of unjust enrichment. 812 F. App'x 828, 833-835 (11th Cir. 2020). At the commencement of this trial, the Court deferred ruling on the issue and stated it could consider any jury verdict as advisory. In the Rule 50(b) motion, the Defendant argues that the claim is equitable and the jury's role in this case is advisory. In *Hughes*, the Eleventh Circuit stated that where a defendant has been unjustly enriched, the theory of the case can be either legal, triable by jury, or equitable, requiring a bench trial. "[F]or restitution to lie in equity, the action generally must seek . . . to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 835 (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212-14 (2002)). Although Defendant argues that Plaintiff seeks disgorgement, that is not the case. There is no evidence that Lusad generated revenue, let alone profits to disgorge to Plaintiff. Rather, the Plaintiff's claim seeks a legal remedy for the "value of the benefit" received by Defendant Leon, which Noboa repeatedly stated was 60% of Lusad's value. Therefore, in this context, *Hughes* requires this type of unjust enrichment claim to be tried by a jury.[5]

Having found the jury verdict binding, the Court must determine whether the jury verdict is properly supported under Rule 50(b). Defendant filed a renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b). The question before the Court on a renewed Rule 50(b) motion is "whether the evidence is legally sufficient to find for a party on that issue." *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016). (citations

---

[5] Even if the claim were one seeking a purely equitable remedy, the Court would reach the same result in this case of rejecting the verdict of an advisory jury for the reasons stated in this Order.

omitted). "In considering whether the verdict is supported by sufficient evidence, 'the court must evaluate all the evidence, together with any logical inferences, in the light most favorable to the non-moving party.'" *Id.* (quoting *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1560 (11th Cir. 1995)).

### III. LEGAL ANALYSIS

To prove a claim of unjust enrichment, a plaintiff must establish: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying its value. *State Farm Mut. Auto. Ins. Co. v. Med. Serv. Ctr. of Fla., Inc.*, 103 F. Supp. 3d 1343, 1355 (S.D. Fla. 2015); *Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 805 (11th Cir. 1999) ("[T]he law will, in essence, "create" an agreement in situations where it is deemed unjust for one party to have received a benefit without having to pay compensation for it."). An award of damages in an unjust enrichment case must be based on competent, substantial evidence. *Planeta Miami, Inc. v. Lieberman*, 990 So. 2d 551, 554 (Fla. 3d DCA 2008).

A. *Value of the Benefit Conferred*

"As a matter of Florida law, damages for unjust enrichment can be based on either '(1) the market value of the services; or (2) the value of the services to the party unjustly enriched." *Kallberg Indus., LLC v. Automotive Experts, Inc.*, 861 F. App'x 321, 323 (11th Cir. 2021) (quoting *Alvarez v. All Star Boxing, Inc.*, 258 So. 3d 508, 512 (Fla. 3d DCA 2018)); *see also F.H. Paschen, S.N. Nielsen & Assoc., LLC v. B&B Site Dev't, Inc.*, 311 So. 3d 39, 50 (Fla. 4th DCA 2021). "The measure of damages for unjust enrichment is the value of the benefit conferred, not the amount the plaintiff hoped to receive or the cost to the plaintiff." *F.H. Paschen*, 311 So. 3d at 50 (citing *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 332 (Fla. 5th DCA 2007) (holding that an award

7

of damages for unjust enrichment was not supported by competent, substantial evidence where the plaintiffs "only presented evidence of the money they hoped to receive" and did not present evidence of the value of the benefit conferred)).

"Because unjust enrichment damages are economic damages, the amount of damages must be measurable and quantifiable: '[i]t has long been accepted in Florida that a party claiming economic losses must produce evidence justifying a definite amount.'" *Alvarez v. All Star Boxing, Inc.*, 258 So. 3d 508, 512 (Fla. 3d DCA 2018) (quoting *United Auto Ins. Co. v. Colon*, 990 So. 2d 1246, 1248 (Fla. 4th DCA 2008)); *Merle Wood & Assoc., Inc. v. Frazer*, 307 So. 3d 773, 776 (Fla. 4th DCA 2020). "Economic damages may not be founded on jury speculation or guesswork and must rest on some reasonable factual basis." *Alvarez*, 258 So. 3d at 512 (quoting *United Auto. Ins. Co. v. Colon*, 990 So. 2d 1246, 1248 (Fla. 4th DCA 2008) (citing *Swindell v. Crowson*, 712 So. 2d 1162, 1164 (Fla. 2d DCA 1998)). There must be some standard or "yardstick" by which the amount of damages may be adequately determined. *Montage Group, Ltd. v. Athle-Tech Computer Systems, Inc.*, 889 So. 2d 180, 195 (Fla. 2d DCA 2004) (holding court erred by failing to order appropriate remittitur for unjust enrichment award). Unjust enrichment awards are not punitive and allowing plaintiffs a recovery worth more than the benefit conferred would result in an unwarranted windfall. *Id.* at 197.

In *Alvarez,* the plaintiff's theory of damages was that damages for unjust enrichment should be an unspecified percentage of Alvarez's subsequent earning for all or part of his lifetime. 258 So. 3d at 510. The Third District Court of Appeal held that "[e]ven assuming earnings could be used to establish unjust enrichment, they could only be used if the plaintiff provided evidence establishing a fact-based chain of reasoning to allocate or quantify to some degree the plaintiff's contribution to those earnings." *Id.* at 514. "Perhaps this need not be done with mathematical

8

certainty, but it cannot be based upon an unknown, subjective, unexplainable, and therefore, unreviewable method[.]" *Id.*

Here, the Plaintiff presented evidence claiming that it is entitled to 60% of a $2.4 billion valuation done three years after it conferred the benefit. The jury answered "Aug. 26- September 25, 2015" in response to question #2 on the verdict form, which is supported by the evidence as the point in time when the parties collaborated to obtain a concession agreement for a mobile taxi hailing service. Despite this factual finding of the time period, the jury added the following statement to the verdict form: "2.4 billion – value by Goldman Sachs[.] Email on Oct. 24, 2015 offered break-up 25% to be given to Noboa and Domit 12.5% of total amount." By its own explanation, the jury based its damages award on Plaintiff's Exhibit 4, an email dated October 24, 2015, from Leon setting forth a proposed ownership structure in the new company, and Plaintiff's Exhibit # 130, the Goldman Sachs valuation report, which was not admitted because of its hearsay nature. The Goldman Sachs valuation of the L1bre Company is dated October 4, 2018 -- 3 years after the relevant date range of August 26 to September 25, 2015, which the jury found was when Taxinet conferred a benefit on Leon.

Plaintiff argued at trial that Leon, himself, conceded the value of the company, which alone is sufficient evidence of value. *Kleiman v. Wright*, No. 18-cv-80176, 2021 WL 5447110, at *3-4 (S.D. Fla. Nov. 22, 2022) (stating the Defendant's statements of the value of the property are competent evidence). Leon's testimony, however, is based on the value of the Concession calculated from points in time after the benefit was purportedly conferred from August 26 to September 25, 2015, and it is based on hearsay evidence. Again, the valuation, itself, is not in evidence and the valuation does not represent the value of any benefit conferred on Leon in the relevant time period. At best, Leon's statement is competent evidence of the company's value in

October 2018, which is at an irrelevant time. During the time the jury found Plaintiff conferred a benefit (August-September 2015), Leon did not testify as to the value of the company.

Moreover, at the time the Plaintiff conferred a benefit on Defendant, the evidence showed any valuation would be speculative. It makes sense as the business was not off the ground and the concession agreement was not awarded until many months later. Plaintiff's own witness, Pedro Domit, described the speculative nature of determining the value of the company in the fall of 2015. He described his financial modeling as informed "guesswork." Adding to the speculative nature of the $2.4 billion dollar figure, Noboa, himself, also testified that Leon was suing the government of Mexico City in federal court in New York to recover the $2.4 billion and Noboa seeks a cut of whatever Leon recovers from the government in that case. (Noboa 12/8/2021 Trial Tr. at 47-48). That level of speculation disallows the jury's measure of damages to form the basis of a judgment in this case.

Further, there is no evidence of the market value of Taxinet's purported services or benefit conferred. There was no "yardstick" against which the jury could determine this value -- an issue the jury clearly struggled with as is demonstrated by the jury's note to the court. There also was no evidence quantifying, delineating, or accounting for the efforts after September 25, 2015, by Leon, Zayas, and their team to create the working model required by Mexico City. Additionally, after October 24, 2015, Taxinet did not participate in efforts to obtain the concession, which was officially awarded in June 2016. Given the lack of substantial competent evidence upon which to measure damages, the Court finds it appropriate to enter judgment as a matter of law in favor of Leon.

    B.  *Connection between Benefit Conferred and the Awarding of the Concession*

Plaintiff argued at trial that the video presentation shown to the Secretary of Mobility on August 26, 2015, resulted in the award of the concession to Lusad. The video featured Taxinet's name and services. Leon, however, was intricately involved in making the video and he paid for its production. Leon 12/7/2021 Trial Tr. at 29-30. The evidence was that the video impressed the government officials, who wanted to move forward with the project. The parties did not finalize a written agreement and parted ways on October 25, 2015. There was no actual "closing" after the video presentation. Rather, it seemed the government gave the green light for the parties to move forward with the next steps towards the goal of cementing an agreement. After the parties parted ways in October 2015, Leon proceeded with new partners and the technology was evaluated by multiple government agencies, and ultimately, offered up through a bidding process.

The evidence does not connect the video presentation in August 2015 to the official awarding of the concession *nine months later* in June 2016. The time that elapsed alone is sufficient to eviscerate the causal connection, let alone the evidence that Leon worked with software engineers and other partners to develop the product in the months leading to the official award. Accordingly, the Court finds the jury's award of damages cannot be reasonably connected to the benefit Taxinet conferred in August 2015 when it presented a video to the government of Mexico City. Accordingly, the Court finds it appropriate to grant Leon's Renewed Motion for Judgment as a Matter of Law.

DONE AND ORDERED in Chambers at Miami, Florida, this 16th of June 2022.

*Federico A. Moreno*

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record